UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

CIVILGEO, INC.,                                    Case Number: 25-10731-11

        Debtor.

---

CIVILGEO, INC.,

        Plaintiff,

v.                                                 Adversary Number: 25-00019

HISCOX INSURANCE COMPANY,
INC., and ETERNIX, LTD.,

        Defendants.

---

## DECISION ON (i) MOTION BY CIVILGEO, INC., FOR PARTIAL SUMMARY JUDGMENT AND (ii) MOTION BY HISCOX INSURANCE COMPANY, INC., FOR SUMMARY JUDGMENT

The matters before the Court are cross motions for summary judgment. The parties ask the Court to determine whether there is insurance coverage under a policy insuring Plaintiff.

CivilGEO, Inc., is a software company. It specializes in the development and sale of civil engineering software. Dkt. No. 24-1 at 12. The company has three products: GeoHECRAS, GeoHECHMS, and GeoSTORM. Dkt. No. 24-1 at 13. Christopher Maeder ("Maeder") is CivilGEO's sole owner. Dkt. No. 24-1 at 12. Eternix, Ltd. ("Eternix"), another software company, developed and launched software known as Blaze Terra. Dkt. No. 28-2 at 2.

The events that set this dispute in motion began more than a decade ago. In 2011, Maeder contacted Eternix. Eternix alleges that Maeder asked to

evaluate its Blaze Terra software. Eternix agreed. A trial version of the software was sent to Maeder. Dkt. No. 28-2 at 2. Eternix claims it sent Maeder an updated version of the software in 2013 at Maeder's request. Dkt. No. 28-2 at 9. CivilGEO began selling its first software product, GeoHECRAS, in 2014. Dkt. No. 24-1 at 13.

Nearly eight years later, in March 2022, Eternix says it received reports that CivilGEO and Maeder misappropriated its Blaze Terra software. Dkt. No. 28-2 at 10-11. Eternix concluded that CivilGEO incorporated code from the Blaze Terra software into its products, GeoHECRAS and GeoHECHMS. Dkt. No. 28-2 at 12-13.

Hiscox Insurance Company, Inc. ("Hiscox"), is an insurance company. It issued policy number P100.515.631.6 ("Policy") to CivilGEO. The Policy was effective from September 8, 2022, to September 8, 2023. The retroactive date for the Policy is April 1, 2011. The Policy lists CivilGEO as the named insured. Among other provisions, the Policy includes a Professional Liability Coverage Form and a Technology Services/IT Consulting Services Endorsement ("Endorsement 2"). Dkt. No. 28-1 at 3.

There is no dispute that Eternix first made allegations against CivilGEO during the Policy's period. Dkt. No. 19 at 8. Following correspondence with Eternix's counsel about Eternix's investigation (Dkt. No. 24-7 at 2), CivilGEO notified Hiscox of a potential claim in February 2023. Dkt. No. 24-2 at 11, ¶ 36. Hiscox admits it received notice. Dkt. No. 24-2 at 11, ¶ 37. On September 7, Hiscox sent an email to Maeder that included an initial coverage analysis of

Eternix's anticipated litigation. Dkt No. 24-8. Based on the information at the time, Hiscox advised Maeder that the Policy might cover an expected copyright infringement claim. Dkt. No. 24-8 at 4.

On September 14, 2023, Eternix sued CivilGEO and Maeder in District Court (the "Litigation"). Eternix's Complaint asserts seven claims (Dkt. No. 28-2 at 22-28) against CivilGEO:

1.  Copyright infringement

2.  Misappropriation of trade secrets under Wisconsin Uniform Trade Secret Act (Wis. Stat. Section 134.90)

3.  Misappropriation of trade secrets under Federal Defend Trade Secrets Act

4.  Breach of contract

5.  Breach of the covenant of good faith and fair dealing

6.  Conversion

7.  Unjust enrichment

Plaintiff sent notice of this Complaint to Defendant the next day. Dkt. No. 24-9 at 2.

The claims can be combined into three groups: copyright infringement, misappropriation of trade secrets, and state common-law claims. Eternix seeks damages, pre- and post-judgment interest, permanent injunctive relief, and costs, expenses, and disbursements, including attorneys' and experts' fees. Dkt. No. 28-2 at 29.

On October 2, Hiscox reversed course. In a letter to Maeder, Hiscox concluded the Litigation did not trigger the insuring agreement. Dkt. No. 24-10.

3

Coverage was denied altogether. Dkt. No. 24-10. A January 2025 letter from Hiscox's counsel reiterates the same conclusion. Dkt. No. 24-12. The Litigation is pending in District Court. But the Litigation against CivilGEO has been stayed due to CivilGEO's bankruptcy.[1]

On April 1, 2025, CivilGEO filed a Chapter 11 petition in this Court. CivilGEO alleges its bankruptcy filing, at least in part, resulted from Hiscox's denial of coverage. Dkt. No. 9 at ¶ 9. As of the petition date, CivilGEO says it has incurred $1,108,279.50 in legal fees and $241,611.12 in expert witness fees and expenses related to the Litigation. Dkt. No. 23 at 5. Hiscox refuses to cover any amount of the expenses related to Eternix's claims or CivilGEO's defense costs. Dkt. No. 19 at 8.

CivilGEO commenced this adversary proceeding on June 18. CivilGEO maintains that Eternix's claims are covered under the Policy. It contends that Hiscox is contractually obligated to defend the claims raised by Eternix or indemnify CivilGEO for any resulting loss. Dkt. No. 9, ¶ 18. CivilGEO asks the Court to grant partial summary judgment against Hiscox. CivilGEO requests that Hiscox be found liable for three types of damages:

- the amount of $200,000, the Policy's sublimit of liability;

- prejudgment interest on the sublimit of liability in the Policy; and

- CivilGEO's costs and attorneys' fees incurred in connection with the Litigation in excess of the sublimit in the Policy.

---

[1] Because of the automatic stay, the District Court issued a summary judgment ruling on the claims against Maeder only.

These amounts total more than the Policy's sublimit of liability. Dkt. No. 23 at 19-20. In addition, it requests the costs and attorneys' fees incurred in this adversary proceeding.

Hiscox disagrees. Hiscox argues it has no duty to defend or indemnify CivilGEO based on the plain language of the Policy and the Litigation allegations. Hiscox requests that summary judgment be granted dismissing this adversary proceeding. Dkt. No. 26 at 13.

## DISCUSSION

### I.  Jurisdiction

This case involves a determination of rights under property of the bankruptcy estate. CivilGEO believes that this Court has jurisdiction. Hiscox, on the other hand, "neither admits nor denies" any allegations about jurisdiction, whether it will affect the bankruptcy estate, whether venue is proper, or whether this Court can enter a final order. Dkt. No. 24-2 at 4.

The basis for such answers is that it claims it lacks information sufficient to form a belief as to the truth of the allegations. Similarly, it claims it doesn't know whether or not CivilGEO filed a Chapter 11, or whether there is jurisdiction over the adversary under a standing order.

Pleading insufficient knowledge in an answer to a complaint "has the effect of a denial." Fed. R. Civ. P. 8(b)(5). Indeed,

> A statement of lack of knowledge or information is most appropriate as to matters that are peculiarly within the control of the opposing party. A specific denial should be used as to matters of public knowledge or on which the defendants could have informed themselves with reasonable effort. In other words, denials for lack of information and belief are appropriate only after the party making

5

such a denial has fulfilled its Rule 11 obligation to make an "inquiry reasonable under the circumstances."

2 MOORE'S FEDERAL PRACTICE - CIVIL § 8.06 (2021) (quoting Fed. R. Civ. P. 11(b); other internal citations omitted).

However, "certain averments may be deemed admitted when the matter is obviously one as to which the defendant has knowledge or information." *Joseph v. Ford Motor Co.*, Case No. 06-10274, 2009 WL 10680506, at *2 (E.D. Mich. Sep. 30, 2009) (Hood, J.). The Rule requires parties to admit or deny allegations unless there is a genuine surprise or lack of information. The purpose of the Rule is to give reasonable notice of the allegations sought to be placed in issue. 5 Charles Alan Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 1261 (4th ed. 2026).

Rule 8(b)(5) does permit a party to state that, in certain instances, they lack knowledge or information sufficient to form a belief about the truth or falsity of the allegation. Fed. R. Civ. P. 8(b)(5). The Court notes:

> [R]esort[ing] to this form of allegation should not be capricious. A denial of knowledge or information requires that the party not only lack first-hand knowledge of the necessary facts involved but also that the pleader lack information upon which she reasonably could form a personal belief concerning the truth of the adversary's allegations. Normally, a party may not assert a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge, a matter of general knowledge in the community, or a matter of public record. A denial of knowledge or information in this context casts doubt on the good faith of the pleader.

5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1262 (4th ed. 2026).

There is a duty of honesty in pleading: an allegation that is obviously within the responding party's knowledge or information in such circumstances

6

is improper. A party denying based on lack of information and knowledge has a duty to reasonably investigate whether the information exists and how difficult it would be to find. *Bommarito v. Equixfax Info. Servs., LLC*, 340 F.R.D. 566, 2022 WL 162271 (E.D. Mich. Jan. 18, 2022).

A number of the answers of Hiscox evade a fair and substantive response. For example:

1.    Plaintiff CivilGEO, Inc. ("CivilGEO" or, post-petition in its capacity as debtor-in-possession, the "Debtor") is a Wisconsin Corporation with its principal place of business at 8383 Greenway Blvd., 6th floor, Middleton, WI 53562.

ANSWER: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same and puts the plaintiff to its proof.

3.    CivilGEO commenced the above-captioned bankruptcy case (the "Bankruptcy Case") on April 1, 2025 by filing a petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code (the "Petition Date").

ANSWER: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same and puts the plaintiff to its proof.

4.    All rights under the insurance policy described below are property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1).

ANSWER: Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and therefore denies the same and puts the plaintiff to its proof.

Notice of the commencement of the bankruptcy was sent to Hiscox by the Court through the Bankruptcy Noticing Center. The Summons and Complaint in this adversary were served on Hiscox and contained the same information. It could easily have confirmed a Chapter 11 was filed on April 1, 2025.

7

Similarly, at all times Hiscox was aware of the address of CivilGEO. The address appears in the Policy. Likewise, refusing to admit or deny because the allegation is a conclusion of law and thus the responding party "lacks knowledge or information" is evasive rather than fairly responding to the substance of a pleaded allegation.  *See IncredibleBank v. Provocative*, 710 F. Supp. 3d 103, 109 n.2 (D.R.I. 2024); *Bommarito v. Equixfax Info. Servs., LLC*, 340 F.R.D. at 569; *Martinez v. Naranjo*, 328 F.R.D. 581, 599 (D.N.M. 2018); and *Saladana v. Riddle*, No. 98 C 2277, 1998 WL 373413, at *1 (N.D. Ill. June 29, 1998).

The Court considers its constitutional authority to enter a final judgment. The Supreme Court in *Stern v. Marshall* limited the bankruptcy court's authority to enter final judgments on certain common-law claims unrelated to bankruptcy. *Stern v. Marshall*, 564 U.S. 462, 469 (2011).

Even assuming the Court lacks authority over this matter, bankruptcy proceedings are civil proceedings. To the extent that Eternix's claims are before this Court, the Court applies the same standards used in district courts to determine insurance coverage under Wisconsin law. This Decision therefore constitutes the Court's findings of fact and conclusions of law. *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014).

Section 157(c)(1) provides that "a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157 (c)(1). And section 1334(b) states ". . . the district courts shall have original but not exclusive jurisdiction of all civil

8

proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. The matter of insurance coverage does not only "arise in" bankruptcy. But the matter is "related to" the bankruptcy proceeding because the outcome of this Court's decision may impact the administration of the estate. 28 U.S.C. § 157(b)(2)(A). CivilGEO is a debtor. Its insurance coverage may affect the estate and distribution available to creditors. Thus, this Court also has "related to" jurisdiction under section 1334.

## II.  Summary Judgment Standard

The summary judgment standard under Fed. R. Bankr. P. 7056, adopting Fed. R. Civ. P. 56, is widely known: summary judgment may be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] If the dispute about a material fact is "genuine," meaning if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In conducting its review, a court has a single task: to determine, based on the record, whether a given factual dispute requires a trial. *Id.* A court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021) (quoting *Johnson v. Rimmer*, 936 F.3d 695, 705–06 (7th Cir. 2019)). The court must construe all

---

[2] Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. Under Rule 7056 of the Code, Rule 56 applies in adversary proceedings.

facts and indulge all reasonable inferences in the light most favorable to the non-moving party when assessing whether there is a genuine dispute of material fact. *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

The movant carries the burden of proof. If the movant demonstrates that there is no genuine issue of material fact, then the burden shifts to the nonmovant to present evidence to show there is a genuine issue for trial. The nonmovant does not have to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmovant may oppose the motion by "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

Here, summary judgment is appropriate. There are no material facts in dispute. The parties agree that the matter is purely a legal issue. The Court may resolve the matter.

### III. Obligations Under the Policy

#### A.  General Principles of an Insurer's Duty to Defend

Wisconsin law provides well-established guidelines for determining an insurer's obligations under an insurance policy. *Milwaukee Notions, Inc. v. Erie Ins. Exchange (In re Milwaukee Notions, Inc.)*, No. 06-25918-SVK, 2009 WL 1351101, at *3 (Bankr. E.D. Wis. May 11, 2009); *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 18, 261 Wis. 2d 4, 18, 660 N.W.2d 666, 673. To determine whether a policy entitles an insured to coverage, a court must compare the allegations within the "four corners" of the complaint to the

10

terms of the entire insurance policy. *Fireman's Fund Ins.*, 660 N.W.2d at 673. Coverage is a matter of law. There is no use for extrinsic facts or evidence. *Id.*

Judicial interpretation of an insurance policy seeks to determine and give effect to the parties' intent. *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 32, 673 N.W.2d 65, 73; *Fireman's Fund Ins.*, 660 N.W.2d at 673. Policy terms are given their ordinary meaning. Allegations in the complaint are read liberally. Undefined policy language is ambiguous if it is susceptible to more than one construction. *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 142, 628 N.W.2d 916, 920 (quoting *Smith v. Atl. Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 599 (1990)). Any ambiguity is interpreted in favor of the insured. *Milwaukee Notions, Inc.*, 2009 WL 1351101, at *3. But construction should not bind an insurer to a risk it did not consider. *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 283, 493 N.W.2d 734, 737 (Wis. Ct. App. 1992).

Insurance policies are interpreted reasonably and not in a manner that produces absurd results. As noted by the court in *Western States Insurance Company v. Wisconsin Wholesale Tire, Inc.*, "Wisconsin reads ambiguities favorably to the insured, but it does not torture ordinary words until they confess to ambiguity. Deconstruction is not part of Wisconsin's approach to insurance contracts." *W. States Ins. Co. v. Wis. Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999).

An insurer's duty to defend is premised on the nature of a claim. *Fireman's Fund Ins.*, 660 N.W.2d at 674. The merits of a claim are irrelevant.

11

*Milwaukee Notions, Inc.*, 2009 WL 1351101, at \*3. The relevant inquiry is "whether the conduct alleged in the complaint is arguably within a category of wrongdoing covered by the policy." *Air Eng'g, Inc. v. Indus. Air Power, LLC*, 2013 WI App 18, ¶ 10, 346 Wis. 2d 9, 18, 828 N.W.2d 565, 570 (citing *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994)). If any of the allegations in the complaint "give rise to the possibility of recovery," then an insurer has a duty to defend. *Fireman's Fund Ins.*, 660 N.W.2d at 673. Finally, if the insurance policy covers one claim in the underlying suit, then the insurer must defend against the entire complaint. *Badger Mining Corp. v. First Am. Title Ins. Co.*, 534 F. Supp. 3d 1011, 1021 (W.D. Wis. 2021); *Milwaukee Notions, Inc.*, 2009 WL 1351101, at \*3.

## B. The Policy Terms

The Court begins with the Policy language. Relevant provisions of the Policy state:

A. INSURING AGREEMENT

> **We** shall pay on **Your**[3] behalf **Damages** and **Claim Expenses** in excess of the Deductible resulting from any covered **Claim** that is first made against **You** during the **Policy Period** and reported to **Us** pursuant to the terms of the Policy for **Wrongful Acts** committed on or after the Retroactive Date.[4]
> ....

---

[3] "You" and "Your" refers to CivilGEO. "We" and "Us" refers to Hiscox. Dkt. No. 28-1 at 18, 19.

[4] Dkt. No. 28-1 at 8 (emphasis in original).

**Coverage for Claims Made Against You**

. . . **We** will pay **Damages** on **Your** behalf for any **Claim** that falls within the Insuring Agreement and within all of the terms and conditions outlined in the policy. Covered **Claims** are for **Your Wrongful Acts** in providing or failing to provide **Professional Services** . . . . The most **We** will pay is outlined in the Limits of Liability Section and items **We** will not pay are outlined in the Exclusions section.[5] (emphasis in original)

The Policy defines the bolded terms:

"**Claim**" means any written demand for Damages or for non-monetary relief.[6] The Policy includes an endorsement that amends "**Claim**" to also mean a "**Software Copyright Infringement Claim**" and "**Infringement Claim**."

TS-B. **Software Copyright Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright of source code or other software code.

TS-C. **Infringement Claim** means any **Claim** alleging or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, or slogan.[7]

"**Claim Expenses**" has two meanings, one being "all reasonable and necessary fees, costs and expenses (including the fees of attorneys and experts) incurred in the investigation, defense and appeal of a **Claim**[.]"[8]

"**Damages**" means, in relevant part, "a monetary judgment or monetary award that **You** are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by **Us** with **Your** consent."[9]

"**Wrongful Act**" means "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by **You** in the performance of **Your Professional Services**."[10]

---

[5] Dkt. No. 28-1 at 7.

[6] Dkt. No. 28-1 at 16, ¶ C.

[7] Dkt. No. 28-1 at 22, ¶ 2 (emphasis in original).

[8] Dkt. No. 28-1 at 16, ¶ D(1).

[9] Dkt. No. 28-1 at 17, ¶ E.

[10] Dkt. No. 28-1 at 19, ¶ U.

The initial meaning of "**Professional Services**" was "only those services specified in Endorsement to this Policy as performed by or on behalf of an **Organization** for others for a fee or other compensation."[11]

Endorsement 2 amends the term "**Professional Services**" to mean "Technology Services or Information Technology (IT) consulting services performed for others for compensation."[12]

And it also provides a list that constitutes "**Technology Services**." In relevant part, "**Technology Services**" means:

> . . .
>
> 7. software installation, customization, and support;
> 8. software programming and development[.][13]

The Policy lists the following exclusions relevant to this matter:

> This Policy does not apply to and **We** shall have no obligation to pay any **Damages**, **Claim Expenses** or **Supplemental Payments** for any **Claim**:
> . . .
>
> B.  based upon or arising out of any actual or alleged gaining of any profit or advantage to which **You** were not legally entitled.[14]
> . . .
>
> M.  based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan or patent or theft of trade secret.[15]
> . . .
>
> O.  based upon or arising out of any actual or alleged breach of contract or breach of any implied or express warranty or guarantee; provided, however, this Exclusion shall not apply to:

---

[11] Dkt. No. 28-1 at 18, ¶ O.

[12] Dkt. No. 28-1 at 22, ¶ 1.

[13] Dkt. No. 28-1 at 22, ¶ 2

[14] Dkt. No. 28-1 at 11, ¶ B.

[15] Dkt. No. 28-1 at 12, ¶ M.

1.  any obligation you have to perform your **Professional Services** with reasonable skill or care; or

2.  any liability **You** would have had in absence of such contract, warranty or guarantee.[16]

Endorsement 2 amends Exclusion M to the following:

M.  based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan, or patent, or theft of trade secret; provided, however, this exclusion will not apply to **Software Copyright Infringement Claims** and **Infringement Claims**.[17]

## C.  Interpretation of the Policy Terms in This Case

CivilGEO asserts the Complaint alleges it committed "wrongful acts" within the Policy's meaning. Dkt. No. 19 at 2. As to the phrase "performed for others for compensation," CivilGEO contends that the Policy provides no textual basis for a "services-not-products" limitation.  CivilGEO also argues that Hiscox imposes the word "fee" on the amended definition of "Professional Services." CivilGEO says whether it earned revenue through product sales or another form of compensation is irrelevant. CivilGEO concludes the Policy covers technology services performed for others for *any* kind of "compensation."

Hiscox, on the other hand, argues that CivilGEO was not performing services for *others*. "Others" include Eternix according to Hiscox. Thus Hiscox suggests that the "other" is limited to Eternix. Rather, Eternix's claim is a product, not a services claim according to Hiscox. Dkt. No. 19 at 18, 28, and 29.

---

[16] Dkt. No.  28-1 at 12, ¶ O.
[17] Dkt. No.  28-1 at 22, ¶ 4.

Hiscox contends Eternix's allegations concern stolen intellectual property, contract violation, and selling software products. None of these allegations describe an error in the providing of services for others for a fee or compensation according to Hiscox.

Hiscox acknowledges the Policy's amendment to the definition of "Professional Services." But Hiscox asserts "performed for others for compensation" does not rule out a fee as compensation.

The Court finds the phrase ambiguous. There is more than one interpretation. And it is undefined. The Court need not address Technology Services. It's a defined term with several meanings, including software installation, customization, support, and software programming and development. Dkt. No. 28-1 at 22, ¶ 2. The Court starts with Hiscox's construction of "performed for others for compensation." The question then becomes whether a reasonable insured would understand that its technology services constitute services performed for others for compensation.[18]

The Court divides the phrase into two parts: "performed for others" and "for compensation." An ordinary reading of "performed for others" suggests a relationship between CivilGEO and another party. The form of the relationship is unspecified. Nothing suggests that the insured must perform services for a specific person or entity. CivilGEO develops software and sells it to customers.

---

[18] "A court's concern is what a reasonable person in the position of the parties would have understood the language to mean, not whether the parties' use of terminology was technically correct." 43 AM. JUR. 2D INSURANCE § 267.

The software is installed and CivilGEO supports it. The Policy does not limit "others" to Eternix or a similarly situated entity.

"For compensation" indicates that the technology services must be performed in exchange for payment. In ordinary terms, "for compensation" generally refers to a benefit or payment received for services rendered. COMPENSATION, BLACK'S LAW DICTIONARY (12th ed. 2024).

CivilGEO is paid for the software. As the District Court Complaint asserts, CivilGEO sold software all over the world and earned substantial amounts for those sales. This included the creation of software, its sale, and related services. It was paid for this. Thus, it can be reasonably understood that this constitutes compensation for technology services. Any other interpretation would render the endorsements, amendments, and exceptions circular and nonsensical.

The Court must resolve any ambiguities before determining coverage. The parties present competing interpretations of "performed for others for compensation" within the meaning of "Wrongful Act." Read together, the Policy provisions establish: "**Wrongful Act**" [is defined as] "any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** committed by [CivilGEO] in the performance of [its] Professional Services,"[19] meaning "**Technology Services . . . performed for others for compensation.**" Dkt. No. 28-1 at 22, ¶ 1 (emphasis added).

---

[19] Dkt. No. 28-1 at 19, ¶ U.

The Court interprets the ambiguity in favor of CivilGEO. The amended definition of "Professional Services" does not say coverage is limited to services as opposed to products. Neither do surrounding terms or provisions provide guidance on the distinction posited by Hiscox. The term "for compensation" is broad. The Policy does not distinguish between service fees or profits generated through products sales.

If Hiscox intended to limit coverage to technology services performed for specified *others*, it could have said so in the Policy. An interpretation of policy language "should advance the insured's reasonable expectations of coverage." *Taylor v. Greatway Ins. Co.*, 245 Wis. 2d at 142.

The Policy includes claims arising from alleged or actual infringement. So it would be absurd to construe the Policy as limited to services for a competitor who alleges an infringement claim when no services were provided to that competitor. Indeed, CivilGEO would have reasonably expected coverage for claims of copyright infringement brought by Eternix. Dkt. No. 28-2 at 22, ¶¶ 56-60. Hiscox's arguments are not persuasive.  The Court finds the CivilGEO construction of the phrase comports with the reasonable risks and intention of the parties. Any ambiguity must be interpreted in favor of CivilGEO as the insured.

### D.  Coverage Under the Policy

The Court now turns to whether the allegations give rise to coverage under the Policy. Read together, the Policy identifies three elements are needed under Endorsement 2 to trigger Hiscox's duty to defend: (1) The Policy covers a

18

claim alleged by Eternix; (2) CivilGEO commits a wrongful act, meaning "any actual or alleged breach of duty, negligent act, error, omission"[20]; and (3) CivilGEO commits "Wrongful Acts in providing"[21] its "Technology Services . . . performed for others for compensation."[22] The Policy also included a Software Copyright Infringement Endorsement.[23] It specifically says the exclusion from coverage does not apply to "Software Copyright Infringement Claims and Infringement Claims."[24]

The Policy definitions were amended to include Software Copyright Infringement Claim and to include that as a Claim. Dkt. No. 1-4 at 23. The Policy also states the exclusions to coverage in Clause III.M. "will not apply to **Software Infringement Claims** and **Infringement Claims**." Dkt. No. 1-4 at 23.

The Court begins with the copyright infringement claim. First, the Policy covers the claim. The Complaint says CivilGEO "*[has] infringed and [is] continuing to infringe Eternix's copyrights in and relating to the Blaze Terra software* . . . by using, copying, producing, distributing, and placing upon the market products . . . that include Blaze Terra software[.]" Dkt. No. 28-2 at 22 (emphasis added). These allegations assert "alleged infringement of any copyright of source code," which squarely fall under the Policy's meaning of a

---

[20] Dkt. No. 28-1 at 19, ¶ U.

[21] Dkt. No. 28-1 at 22.

[22] Dkt. No. 28-1 at 22, ¶ 1.

[23] Dkt. No. 28-1 at 22.

[24] Dkt. No. 28-1 at 22.

Software Copyright Infringement Claim. Dkt. No. 28-1 at 22, ¶ 2. Thus, the first element is satisfied.

Second, there is the possibility that CivilGEO committed a wrongful act. At a minimum, CivilGEO's alleged conduct could be characterized as a breach of duty for not using the source code for evaluation purposes only, as noted in the Complaint. Element two is satisfied.

Third, it is possible that CivilGEO committed the wrongful act in providing software programming and development (i.e., technology services) for others for compensation. The Complaint alleges that CivilGEO produced, distributed, and placed the infringing products on the market. Dkt. No. 28-2 at 22. The Court reads "on the market" liberally. Presumably, on the market means available for others to purchase. The third element is satisfied.

Endorsement 2 notes that software copyright infringement claims and infringement claims will be subject to the following sublimit:

> . . . all **Software Copyright Infringement Claims** and **Infringement Claims** will be subject to a combined sublimit of liability of 200,000.00, which will be part of, and not in addition to, any applicable Limit of Liability.[25]

As a "Software Copyright Infringement Claim," the Court finds the Policy limits the allegation of copyright infringement to a $200,000 sublimit.

The Policy covers at least one claim in the underlying suit. The Court therefore concludes that Hiscox's duty to defend is triggered. And so, Hiscox was obligated to defend against the *entire* Complaint.

---

[25] Dkt. No. 28-1 at 23, ¶ 6.

20

The Court's inquiry does not stop there. In the interest of completeness, the Court will address the remaining allegations. The misappropriation claims are not covered by the Policy. Collectively, the Complaint alleges CivilGEO misappropriated Eternix's trade secrets by improper means. Dkt. No. 28-2 at 23-25. The Complaint also says CivilGEO stole Eternix's software. Dkt. No. 28-2 at 3. The Policy excludes coverage for claims based on "theft of trade secret." Dkt. No. 28-1 at 22, ¶ 4.

The Policy excludes three of the four state common-law claims. The Policy does not cover the breach of contract claim. The Complaint says CivilGEO "*breached the evaluation license agreement* by accessing, using, and incorporating the Eternix Blaze Terra software into [its] products." Dkt. No. 28-2 at 26 (emphasis added). The Policy does not cover the claim of an "alleged breach of contract" asserted in the Complaint. Dkt. No. 28-1 at 12, ¶ O.

Likewise, the Policy excludes coverage for the breach of covenant of good faith and fair dealing claim. The Policy excludes coverage for claims "arising out of any . . . alleged . . . breach of any implied or express warranty[.]" Dkt. No. 28-1 at 12, ¶ O. The covenant of good faith and fair dealing is generally an implied warranty under contract law. The Policy explicitly excludes a breach of warranty, regardless of whether it is expressed or implied.  Thus, the Policy does not cover this claim as alleged in the Complaint.

Next, the Policy does not cover the unjust enrichment claim. The complaint alleges CivilGEO "*unjustly obtained the benefit of Eternix's property, resulting in inequity and damage to Eternix.*" Dkt. No. 28-2 at 28 (emphasis

21

added). The Policy excludes coverage for any claim "arising out of any . . . alleged gaining of any profit or advantage to which [CivilGEO was] not legally entitled." Dkt. No. 28-1 at 11, ¶ B.

It appears, however, the Policy provides coverage for the conversion claim. The District Court dismissed the claim. Dkt. No. 9 at 5, ¶ 23. But the dismissal does not alter this Court's analysis. Subsequent developments in the Litigation do not eliminate a duty to defend that was possibly triggered by the allegations.

The Complaint alleges CivilGEO committed conversion when it "took, controlled, interfered with, and/or deprived Eternix of the Eternix Blaze Terra software . . . without Eternix's consent and without lawful authority." Dkt. No. 28-2 at 27. The Complaint then says that CivilGEO's misconduct entitles Eternix to an award of exemplary and punitive damages. Dkt. No. 28-2 at 27. There is no exclusion within the Policy that addresses conversion. The Court compares the allegation to the meaning of "Claim" under the Policy. "Claim" means any written demand for Damages. Dkt. No. 28-1 at 16, ¶ C. "Damages" means a monetary judgment or monetary award CivilGEO is legally obligated to pay. Dkt. No. 28-1 at 17, ¶ E. The allegation asserts a form of monetary judgment. So the allegation of conversion is a covered claim under the Policy.

In the same section of the Complaint, it is alleged Blaze Terra was "wrongfully obtained and used by [CivilGEO]." Dkt. No. 28-2 at 27. This suggests an alleged breach of duty within the meaning of "Wrongful Act." The Complaint also asserts that conversion occurred in the course of CivilGEO

22

providing its technology services for others for compensation. The same section of the Complaint alleges that CivilGEO has been and will continue to be unjustly enriched. Dkt. No. 28-2 at 27. Accordingly, on its face the Complaint alleged a covered claim for conversion.

## IV. Plaintiff is Entitled to Damages

The Court finds coverage for two of the seven claims asserted in the Complaint, thus imposing the duty to defend. That said, even if coverage was limited to the infringement claim, the duty to defend was triggered. Hiscox must defend against the entire Complaint under Wisconsin law.

Further, an insurer is responsible for all defense costs when it breaches a duty to defend the insured. *Emp'rs. Mut. Cas. Co. v. Horace Mann Ins. Co.*, 2005 WI App 237, ¶ 8, 287 Wis. 2d 418, 425, 707 N.W.2d 280, 283. Here, Hiscox breached its duty. To date, it refuses to cover any amount of expenses related to Eternix's claims or CivilGEO's defense costs.

The Court finds Hiscox liable for defense costs. The Policy contains a sublimit of $200,000. The Court understands this amount was exceeded. Upon confirmation, Plaintiff is entitled to the amount up to the sublimit with prejudgment interest at 5% per annum from June 20, 2024. To the extent CivilGEO incurred costs and fees in excess of the sublimit, the matter is subject to further determination of the amounts. Plaintiff is entitled to its costs and fees, in an amount to be determined in connection with this adversary proceeding.

**CONCLUSION**

The Court concludes that the Complaint's allegation of copyright infringement is within the Policy's coverage. Further, the allegation of conversion could arguably be within coverage. One Claim within policy coverage is sufficient to trigger the duty to defend the entire suit. Therefore, Hiscox's duty to defend was triggered. Accordingly, CivilGEO's motion for partial summary judgment is GRANTED.

Summary judgment for Hiscox is DENIED.

Coverage of the copyright infringement claim is subject to the $200,000 sublimit as stated in the Policy. Provided, however, that does not exclude interest from the date of the triggering of the duty to defend. Neither does it exclude a claim for the costs and fees incurred in connection with pursuit of the duty to defend.

Determination of the amount of costs and fees incurred in this adversary proceeding is subject to further evidence and proceedings. CivilGEO's damages from Hiscox's breach of its duty will be determined in further proceedings.

This Decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

To the extent, if any, the Court lacks authority to enter a final order, this Decision will also constitute proposed findings and conclusions for consideration by the District Court.

The parties are advised that Bankruptcy Rule 9033 requires objections to proposed findings and conclusions be filed with the Bankruptcy Court within

14 days of service of this Decision. Any party may respond to the other parties' objections within 14 days after service of the objections.

A separate order consistent with this Decision will be entered.

Dated: May 8, 2026

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge

25